IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


UNITED STATES OF AMERICA,

      v.

JASON PAUL SCHAEFER,

          Defendant.

No. 3:17-cr-00400-HZ

OPINION & ORDER


Benjamin Tolkoff
Natalie K. Wight
U.S. Attorney's Office
1000 SW Third Ave., Suite 600
Portland, OR 97204

        Attorneys for Plaintiff

Lisa Ludwig
Ludwig Runstein LLC
333 SW Taylor St., Suite 300
Portland, OR 97204

        Attorney for Defendant

HERNÁNDEZ, District Judge:

Defendant Jason Paul Schaefer is charged with two counts of assault on a federal officer

in violation of 18 U.S.C. § 111(a) and (b); one count of carrying and using a destructive device

during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(l)(B)(ii); one

count of using an explosive to commit a federal felony in violation of 18 U.S.C. § 844(h)(l); and

one count of carrying an explosive during the commission of a federal felony in violation of 18

U.S.C. § 844(h)(2). Mr. Schaefer has seven pretrial motions pending. These include a motion to

suppress search related evidence [70]; a motion to suppress defendant's statements [71]; a

motion to dismiss first superseding indictment count 7 for vagueness [72]; a motion to dismiss

the superseding indictment for vindictive prosecution [73]; a motion for a *Franks* hearing [77];

and a motion to dismiss counts 1 and 2 [79]. The Court heard oral argument on November 20,

2018. After reviewing the parties' briefs and accompanying exhibits, the Court defers ruling on

Mr. Schaefer's motion to suppress statements until further argument is heard, and denies all other

motions.

BACKGROUND[1]

Mr. Schaefer made a series of online purchases from eBay between March and

September of 2017. On September 21, 2017, FBI agents in Portland learned of these purchases.

Included among these purchases were a number of chemicals that agents determined could be

used to make explosives.

On October 10, 2017, agents obtained a search warrant for Mr. Schaefer's apartment. In

the request for this warrant, agents relied in part on information provided by eBay. This

---

[1] The court heard oral argument on the motions on November 20, 2018. No evidence was presented. The following facts have therefore been taken from the parties' motion briefing and accompanying exhibits.

information was originally volunteered and subsequently produced in response to a grand jury subpoena. On October 11, 2017, law enforcement officers—from the FBI, Washington County Sheriff's Office, Portland Police Bureau, Oregon State Police, and other agencies—executed this warrant.

While law enforcement executed the warrant, Mr. Schaefer's Washington County probation officer[2] met with Mr. Schaefer at her office in Hillsboro. After Mr. Schaefer left the probation office, officers—working in coordination with those executing the warrant—attempted to follow him. After they lost contact, Mr. Schaefer's probation officer told officers she would issue a detainer on defendant for violating the terms of his probation.

Mr. Schaefer eventually returned to his apartment complex. When officers recognized his car, they attempted to stop him. Despite being told he was under arrest, he drove away. After a short pursuit, Mr. Schaefer's car came to a stop in traffic. Two officers used their cars to box him in, drew their guns, and ordered him out of the car. Instead of complying with these commands, Mr. Schaefer stated something to the effect of "we're all going to die" and ignited a cigarette package he was holding. The cigarette package detonated, and Mr. Schaefer's left hand was severely injured.

Mr. Schaefer was arrested and transported to a hospital for medical treatment. Meanwhile, Mr. Schaefer's car and its contents—including a second cigarette package—were searched without a warrant. The cigarette package allegedly contained TATP, an explosive material. Additional incriminating evidence, which included igniters and chemicals, was discovered in Mr. Schaefer's apartment pursuant to the original warrant. Officers also seized electronic storage devices, and a business card for a storage facility, with a unit listed on back.

---

[2] Mr. Schaefer was on probation following his May 2017 felony conviction being a felon in possession of body armor. He also has a 2012 New York felony conviction for attempted assault.

Officers immediately opened and secured the storage unit without a warrant. They did not observe any obvious threats to public safety but did observe a container that looked like a cooler. After later obtaining and executing a warrant for the unit, officers found additional incriminating evidence.

On October 25, 2017, Mr. Schaefer was indicted for two counts of assault on a federal officer, in violation of 18 U.S.C. § 111(a) and (b), and one count of using an explosive to commit a federal felony in violation of 18 U.S.C. § 844(h). On January 3, 2018, the government filed a superseding indictment, charging defendant with four additional counts: one count of carrying an explosive during the commission of a federal felony in violation of 18 U.S.C. § 844(h)(2), two counts of unlawfully transporting explosive materials in violation 18 U.S.C. §§ 842(a)(3)(A) and 844(a), and one count of felon in possession of explosives in violation of 18 U.S.C §§ 842(i)(1) and 844(a).

On November 15, 2018, the government filed a second superseding indictment. Mr. Schaefer is now charged with two counts of assault on a federal officer in violation of 18 U.S.C. § 111(a) and (b); one count of carrying and using a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(l)(B)(ii); one count of using an explosive to commit a federal felony in violation of 18 U.S.C. § 844(h)(l); and one count of carrying an explosive during the commission of a federal felony in violation of 18 U.S.C. § 844(h)(2).

DISCUSSION

I.    **<u>Defendant's Motion to Suppress Search Related Evidence.</u>**

Mr. Schaefer makes six arguments in support of his motion to suppress evidence: (1) officers conducted an unlawful traffic stop; (2) officers conducted a warrantless search of Mr. Schaefer's vehicle and a camel cigarette package without a valid exception to the warrant

requirement; (3) the search warrant for his apartment was invalid because it was based on stale information, obtained without a warrant; (4) officers exceeded the scope of the warrant when, while searching Mr. Schaefer's apartment, they seized a storage facility business card with a unit listed on the back; (5) affidavits submitted in support of the search warrant did not provide probable cause to search the storage unit; and (6) any information obtained from seized electronic devices is fruit of the poisonous tree.

    1.  <u>Traffic Stop</u>

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures by the government. U.S. Const. Amend. IV; *Elkins v. United States*, 364 U.S. 206, 213 (1960). A person is seized when, "by means of physical force[3] or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (198). In *California v. Hodari*, the Supreme Court clarified that a seizure "requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority. 499 U.S. 621, 626 (1991). In reaching this conclusion, the Court relied on *Brower v. Inyo County*, 489 U.S. 593, (1989):

> In that case, police cars with flashing lights had chased the decedent for 20 miles—surely an adequate "show of authority"—but he did not stop until his fatal crash into a police-erected blockade. The issue was whether his death could be held to be the consequence of an unreasonable seizure in violation of the Fourth Amendment. We did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that "show of authority" did not produce his stop.

*Id.* at 628. A traffic stop is therefore a seizure—subject to the reasonableness requirement of the Fourth Amendment—as it is generally produced by submission to the assertion of authority. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996) ("Temporary detention of individuals

---

[3] Physical force may be as slight as a momentary touching. *California v. Hodari*, 499 U.S. 621, 625 (1991).

during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment].").

Plaintiff argues that officers conducted an unlawful traffic stop without probable cause.[4] However, there is no allegation that officers engaged in physical force and no evidence that Mr. Schaefer submitted to a show of authority. When Mr. Schaefer arrived at his apartment building, he was confronted by an officer. Upon confrontation, Mr. Schaefer fled the scene in his car. Officers followed and boxed in Mr. Schaefer's car while he was stopped in traffic. Mr. Schaefer does not appear to argue that he stopped driving in response to an order, sirens, or flashing lights. Even when police approached his vehicle with guns drawn and ordered him out of the car, Mr. Schaefer still did not submit. Instead, he said something to the extent of "we're all going to die today" and detonated a hand-held explosive. Because officers did not use physical force and Mr. Schaefer did not submit to any assertion of authority, the officers did not seize Mr. Schaefer before the explosive was detonated.

Even if officers did seize Mr. Schaefer when he stopped his car, or when they boxed him in with their cars, they did not obtain any evidence against him until after he detonated explosives in their presence. Because no evidence was seized as a result of Mr. Schaefer stopping his car, there is no evidence to suppress. After Mr. Schaefer detonated the explosive, officers had probable cause to believe a crime had occurred and therefore had reasonable suspicion to stop Mr. Schaefer.

## 2. The warrantless search of defendant's vehicle and cigarette package

---

[4] Generally, officers need only reasonable suspicion to conduct either a traffic stop or an investigative stop. *Hein v. North Carolina*, 135 S.Ct. 530, 537 (2014) ("All parties agree that to justify [a traffic stop for a suspected violation of law], officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law."); *Haynie v. County of Los Angeles*, 339 F.3d 1071, 1075 (9th Cir. 2003) ("The Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops. Reasonable suspicion supported by articulable facts that criminal activity 'may be afoot' will sustain an investigative stop.") (citations omitted).

The government has the burden to show that a warrantless search or seizure falls within an exception to the warrant requirement. *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012) (citing *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001). "Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *Id.* (citing *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010)).

Here, Mr. Schaefer fled from officers in his vehicle. After coming to a stop in traffic, while seated in his car, Mr. Schaefer detonated an explosive device in the presence of two officers. Thereafter, these officers had probable cause to believe the vehicle contained evidence of a crime related to the explosive device. Therefore the automobile exception justified the warrantless search of the car.

3. The warrant to search defendant's apartment

Defendant argues the October 10, 2017 search warrant is invalid because it relied on stale information obtained without a warrant.

A. Staleness

A court may suppress evidence if the information possessed by the police at the time they sought a search warrant was too old to support a finding of probable cause. *Sgro v. United States*, 287 U.S. 206 (1932). "The proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case." *Id.* at 210-211. Information underlying a warrant is not stale "if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Schesso*, 730 F. 3d 1040 (9th Cir. 2013).

Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought. One may properly infer that equipment acquired to accomplish the crime and records of the criminal activity will be kept for some period of time. When the evidence sought is of an ongoing criminal business of a necessarily long-term nature, such as marijuana growing, rather than that of a completed act, greater lapses of time are permitted if the evidence in the affidavit shows the probable existence of the activity at an earlier time.

*United States v. Greany*, 929 F.2d 523 (9th Cir. 1991) (citations omitted).

Here, agents received information about Mr. Schaefer's eBay purchases on September 21, 2017 and requested a warrant nineteen days later. On the record before the Court, it appears that Mr. Schaefer made a string of purchases over a period of approximately seven months. These purchases included electric matches—which the FBI determined to be regulated explosives—and chemicals that could be combined to create explosive materials. These materials are not consumable (like drugs or alcohol) and there is no evidence—or argument—for why they were unlikely to have remained in Mr. Schaefer's possession. Thus, in light of the particular facts of the case and the nature of the criminal activity and property sought, the information was not stale.

### B. Information from eBay

Mr. Schaefer asks the Court, in light of *Carpenter v. United States*, to "carefully examine whether or not the third-party doctrine should apply or be rejected as to the Government's warrantlessly obtaining his eBay transaction history." Def.'s Mot. to Suppress Evidence at 10. Mr. Schaefer argues only that in the digital age, "the records of his transactions using the eBay platform are his personal property and effects, exactly as if those record were contained in his own desk, but now the desk is a virtual desk, and deserving of his expectation of privacy." *Id.* at 10.

Under the third-party doctrine, an individual does not have a reasonable expectation of privacy in information held by a third party. *See e.g.*, *United States v. Miller*, 425 U.S. 435 (1976) (no expectation of privacy in bank records); *Smith v. Maryland*, 442 U.S. 735 (1979) (no expectation of privacy in the telephone numbers a person dials). In *Miller*, the Supreme Court's analysis turned largely on the fact that Miller "voluntarily conveyed" the information contained in the bank records to the bank and that checks were "not confidential communications but negotiable instruments to be used in commercial transactions." 425 U.S. at 442.

In *Carpenter*, the Supreme Court held that the defendant had a "legitimate expectation of privacy in the record of his physical movements as captured through [cell cite location information]," and therefore the third-party doctrine did not apply. *Carpenter v. United States*, 138 S.Ct. 2206, 2217 (2018). The Court focused on the significance of location data, noting that it had "already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements" and that cellphones embody "seismic shifts in digital technology" such that "when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218. Indeed,

> [m]apping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts. As with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his "familial, political, professional, religious, and sexual associations." These location records "hold for many Americans the 'privacies of life.'"

*Id.* at 2217. However, the Court noted that, even within the very specific context of location data, this is a narrow holding. *Id.* at 2220 ("Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or "tower dumps" (a download of information on all the devices that connected to a particular cell site during a particular interval). We do not disturb the application of *Smith* and *Miller* or call into question conventional surveillance

techniques and tools, such as security cameras. Nor do we address other business records that might incidentally reveal location information.").

This Court declines to apply *Carpenter* to this case. *Carpenter*'s holding is narrow, and here, location data is not at issue. Rather, this case involves a string of online commercial transactions through eBay. When Mr. Schaefer used the online platform, he voluntarily conveyed his purchasing information to the company and "exposed" that information to the company in the ordinary course of business. *See Smith*, 442 U.S. at 744 ("When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business."). In doing so, Mr. Schaefer assumed the risk that the company would reveal to police the purchases he made. Thus, like in *Smith* and *Miller*, the third-party doctrine applies, and Mr. Schaefer did not have a reasonable expectation of privacy in the records of his purchases.

Because the October 10, 2017 warrant was not issued on stale information and *Carpenter* does not apply, the warrant is valid.

### 4. Storage facility business card

Mr. Schaefer argues that agents exceeded the scope of the October 10, 2017 warrant by seizing the business card of a storage facility from his apartment. Specifically, Mr. Schaefer argues that law enforcement exceeded the warrant when they "look[ed] at an item that had no relation to explosive materials." Def.'s Mot. to Suppress Evidence at 11.

The government, in response, argues that the business card is explicitly identified by the warrant. The warrant authorizes the seizure of:

> (b) "Files, documents, records and other items relating to the manufacture of explosives, information and documentation involving the purchase and/or sale of stolen commercial explosives, improvised explosives, or military explosives . . . as follows:

…

    ii. Receipts, wire transfers receipts, bank checks, bank account statements, diaries, documents and cancelled checks related to the acquisition, disposition, receipt, <u>storage</u>, purchase and/or sale of explosives.

Gov't Ex. 3 at 23, ECF 96 (emphasis added).

It also authorizes the seizure of:

(c) Any documents listing a person's addresses, telephone numbers, or other contact information regarding the receipt, sale, purchase, <u>storage</u> or theft of explosives from January 1, 2017 to the present.

*Id.* at 24.

On its face, the warrant authorizes the seizure of documents relating to the storage of explosives. Agents found the business card when executing the warrant. That business card identified a storage unit. Agents did not exceed the scope of the warrant when they seized the business card.

 5. <u>Affidavits submitted in support of the October 13, 2017 search warrant</u>

Mr. Schaefer argues the search warrant for his storage unit is invalid because the affidavit failed to establish a nexus between the suspected criminal activity and the place to be searched. Def.'s Mot. to Suppress Evidence at 14.

"The Constitution is clear; a magistrate may authorize a search of a location only if officers establish probable cause to believe evidence of a crime may be found there. Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2016) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A district court reviews for "clear error [in] a magistrate's finding of probable cause to issue a search warrant and [must] give 'great deference' to such a finding." *Id.*

"Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location. A magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Angulo Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (citations omitted); *United States v. Jackson*, 756 F.2d 703, 705 (9th Cir. 1986).

Agents knew that Mr. Schaefer purchased, among other things, a number of chemicals over a period of seven months. According to agents, these chemicals could be combined or easily modified to manufacture improvised explosives. They also knew Mr. Schaefer had purchased "igniters," which they determined to be regulated explosives. Upon searching Mr. Schaefer's apartment, they found containers of chemicals and a receiver for a remote firing device plugged into an electric match. While being apprehended, Mr. Schaefer detonated an explosive device in the presence of two officers. Given this information, agents knew with fair probability that additional evidence would be found in the storage unit. *See United States v. Kowalczyk*, 2012 WL 3201975, at *25 (D. Or. Aug. 3, 2012) (finding probable cause to search a storage unit after having located evidence of identity theft, forgery, financial fraud, or possession of child pornography in defendant's luggage and on his computers). Because the magistrate judge drew reasonable inferences about where evidence was likely to be kept, she did not err in authorizing the search warrant at issue.

6.  Electronic devices

Mr. Schaefer argues that information from the seized electronic devices should be suppressed as fruit of the allegedly unlawful searches. The government represents they have been unable to access data on these password protected and/or encrypted devices. Thus, even if Mr. Schaefer had identified an unlawful search, the issue here is moot.

## II.   **Defendant's Motion to Suppress Statements**

Mr. Schaefer challenges the admissibility of statements made during and following his arrest. Specifically, he argues that his statements were involuntary and made in violation of his *Miranda* rights. Def.'s Mot. to Suppress Statements at 2.

A confession or admission cannot be used as evidence at a criminal trial until a judge has made a determination in a separate hearing that it was voluntarily made. *See Jackson v. Demo*, 378 US 368 (1964). The prosecution has the burden of proof on the issue of voluntariness, and—even though the defense is the moving party—the prosecution assumes the burden of going forward. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

As stated on the record, to the extent the parties wish to present evidence on Defendant's Motion to Suppress Statements [71], the Court will hear this evidence, and any further argument, at the pretrial conference. *See* ECF 107.

## III.   **Motion to Dismiss Superseding Indictment Count 6 for Vagueness**

Mr. Schaefer moves to dismiss count 6[5] of the indictment because charging statute 18 U.S.C. § 842(i)(l) is unconstitutionally vague. Def.'s Mot. to Dismiss for Vagueness at 1-2.

In relevant part, 18 U.S.C. § 842(i)(l) makes it a crime for any person convicted of a felony "to ship or transport any explosive in or affecting interstate or foreign commerce or to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce." "Explosive" is defined under § 841(d) to mean

> any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters. The Attorney General shall publish and

---

[5] Defendant moved to dismiss count 7 of the first superseding indictment on October 27, 2018. The government has since filed the second superseding indictment. Count 7 of the first superseding indictment is now count 6 of the second superseding indictment, and the Court will refer to it as such going forward.

revise at least annually in the Federal Register a list of these and any additional explosives which he determines to be within the coverage of this chapter.

(emphasis added). Mr. Schaefer argues the statute is unconstitutionally vague because "the terms 'explosive(s)' and 'igniters' are impermissibly vague, provide no notice to the public on what is prohibited, and may be thereby arbitrarily enforced." Def. Mot. to Dismiss for Vagueness at 2.

"A criminal statute is void for vagueness if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (citation and quotation marks omitted). Vagueness challenges are either facial or as-applied. "In a facial challenge, a statute is unconstitutionally vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Id.* (quoting *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009). In an as-applied challenge, a statute is unconstitutionally vague if it "fail[s] to put a defendant on notice that his conduct was criminal." *Id.*

"[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Harris*, 705 F.3d at 932 (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)); *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) ("Where, as here, a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face. Rather, we must determine "whether the statute is impermissibly vague *in the circumstances of this case.*") (citing *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2004)); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. The rationale is evident: to sustain such a challenge, the complainant must prove

that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."). "An implicit requirement of this test is that it must be clear what the defendant did." *United States v. Ford*, 2016 WL 4443171, at *14 (D. Or. Aug. 22, 2016).

Here, because the charges do not implicate Mr. Schaefer's First Amendment rights, his challenge to the statute must be examined in light of the facts of the case at hand. This requires Mr. Schaefer to wait to bring his as-applied vagueness challenge until the facts have been established by evidence introduced at trial and the fact-finder has had an opportunity to weigh in. *See United States v. Reed*, 114 F.3d 1067 (7th Cir. 1997) (holding the district court erred by ruling on the motion before trial); *United States v. Reyes*, No. CR06-00556CRB, 2007 WL 831808, at *8 (N.D. Cal. Mar. 16, 2007) ("Without reference to any proof of what Defendants' conduct actually was, however, it is impossible to determine whether the statute provided sufficient notice that it prohibited the scheme of conduct in which they actually engaged. For this reason, the Court finds that Defendants' as-applied constitutional challenge to § 1346 is also premature, and denies the motion to dismiss for vagueness without prejudice. Defendants may, of course, renew their arguments following the presentation of evidence at trial.").

Given the procedural posture of this case, Mr. Schaefer's void for vagueness motion is denied, without prejudice to refiling.

IV. **Motion to Dismiss Superseding Indictment Based on Vindictive Prosecution**

Mr. Schaefer argues the government engaged in vindictive prosecution by filing the first superseding indictment after Mr. Schaefer demanded the case proceed to trial without negotiation. The new charges carry a ten year mandatory minimum. After Mr. Schaefer filed this motion, the government filed a second superseding indictment.

A defendant may establish "prosecutorial vindictiveness by producing direct evidence of the prosecutor's punitive motivation towards [him]. Alternatively, [he] is entitled to a presumption of vindictiveness if [he] can show that new charges 'were filed because he exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness.'" *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007).

Mr. Schaefer has not presented any direct evidence of punitive motivation. Rather, he argues there is an appearance of vindictiveness because of the timing of the filing and the fact that "no substantial and additional incriminating evidence was discovered by the government between the filing" of the two indictments. Def. Mot. to Dismiss Superseding Indictment Based on Vindictive Prosecution at 2. However, "the mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *United States v. Goodwin*, 457 U.S. 368, 382-83 (1982).

In *Goodwin*, the defendant was originally charged with several misdemeanors. *Id.* at 371. Rather than negotiate, he demanded a jury trial. *Id.* He was later charged with and convicted of additional counts, including one felony. *Id.* The Court concluded that "[a]n initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecution." *Id.* at 380. Moreover, a "prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." *Id.*

Mr. Schaefer relies on *Jenkins* to argue that the government acted with an appearance of vindictiveness. In *Jenkins*, the government brought new charges, based on information they knew since the beginning of the case, against a defendant who testified in her own defense at trial. 504 F.3d at 697. The court concluded that this action created the appearance of vindictive prosecution. *Id.* The Supreme Court, however, has explicitly differentiated between a decision to file new charges before trial and after trial. *Goodwin*, 457 U.S. at 381. This case is still in a pre-trial posture. Thus, *Jenkins* does not apply. Because there is no evidence of vindictive prosecution, Mr. Schaefer's motion to dismiss is therefore denied.

V.     **Motion for Franks Hearing**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing where he can attack the veracity of a search warrant affidavit or challenge the omission of material facts in the affidavit. Five requirements must be satisfied for a hearing under *Franks*:

> (1) the defendant must make specific allegations that indicate the portions of the warrant claimed to be false; (2) there must be a contention of deliberate falsehood or reckless disregard for the truth; (3) the allegations must be accompanied by a detailed offer of proof, preferably in the form of affidavits; (4) the offer of proof must challenge the veracity of the affiant, not that of an informant; and (5) the challenged statements in the affidavit must be necessary to a finding of probable cause.

*United States v. Ortega*, 185 F.3d 871 (9th Cir. 1999) (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)).

Where a defendant requests a *Franks* hearing based on the omission of a material fact, he must (1) "make a substantial preliminary showing that the affidavit contained a misleading omission" that "resulted from a deliberate or reckless disregard of the truth," and (2) demonstrate that "had there been no omission, the affidavit would have been insufficient to establish probable

cause." *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994); *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011).

Mr. Schaefer seeks a *Franks* hearing to address the sufficiency of the October 10, 2017 search warrant affidavit. Mr. Schaefer identifies the following four false statements and omissions: (1) the affidavit states that Defendant was convicted of assault in the second degree, while he was actually convicted of attempted assault in the second degree; (2) the affidavit presents a selective list of chemicals and a selective explanation for those chemicals; (3) the affidavit omitted information purporting to show that Mr. Schaefer used the items for an alternative purpose, i.e. making a drug to treat opioid addiction; and (4) this alternative purpose was supported by the report of an FBI agent who concluded that Mr. Schaefer was not a threat to national security and was using his laboratory to make drugs only.

As an initial matter, Mr. Schaefer's brief is not supported by an affidavit or declaration stating that the statements are false or misleading. Rather, Mr. Schaefer relies on a copy of the New York statute defining assault in the second degree; spreadsheets containing records of his eBay purchases; a sealed FBI report; and screenshots of online shopping carts with similar items for purchase. Mr. Schaefer has therefore failed to provide a detailed offer of proof.

Even if Mr. Schaefer had provided a detailed offer of proof, he has failed to demonstrate how each false and omitted statement is material to the probable cause analysis. The affidavit identifies 18 U.S.C. § 842(i)(1) (listing an unlawful act related to the importation, manufacture, distribution and storage of explosive materials) as its basis. Thus, the affidavit need only contain probable cause to find that Mr. Schaefer was a convicted felon who had either received or possessed any explosive shipped in (or affecting) interstate commerce.

First, Mr. Schaefer argues that the affiant misstated his criminal history. The affidavit does incorrectly state that Mr. Schaefer was convicted in New York of assault in the second degree. In reality, Mr. Schaefer was convicted of attempted assault in the second degree. However, both assault and attempted assault in the second degree are felonies. The affidavit also correctly states that Mr. Shaefer was convicted of an Oregon felony in May 2017. Thus, the probable cause analysis here is unaffected by the incorrect information.

Next, Mr. Schaefer argues that the affidavit presents a selective list of chemicals and a selective explanation for those chemicals. While the affidavit does not appear to list *every* chemical Mr. Schaefer purchased, and does not explain *every* possible—or benign—use for those chemicals, the affidavit does not claim or imply that these chemicals may *only* be used to produce explosives. In fact, the affidavit states that these items "have both legitimate uses as well as the potential to be utilized to manufacture and initiate improvised explosives and improvised explosive devices." Gov't Ex. 3 at 6. Even without this disclaimer, the omission is not material to a finding of probable case—that the chemicals have a variety of uses does not contradict the affiants' statement that they "could be combined or easily modified to manufacture improvised explosives." *Id.*

Lastly, Mr. Schaefer seems to argue that omitted evidence would support the alternative theory that he was using the chemicals to manufacture drugs (i.e. Ibogaine) rather than explosives. Specifically, he points to a poster, books, and plants in his apartment that demonstrate his intent to make Ibogaine, an opioid treatment, as well as a report from an FBI agent that concluded that Mr. Schaefer was not a threat to national security and was using his laboratory only to make drugs. As a preliminary matter, Mr. Schaefer does not identify evidence that indicates the affiant either knew about the poster, books, and plants in his apartment, or

understood their significance. More importantly, while this information could perhaps support an alternative search warrant for the illegal manufacture of drugs, that does not mean it detracts from the probable cause here. The affidavit need only contain probable cause to find that Mr. Schaefer was a convicted felon who had either received or possessed any explosive shipped in (or affecting) interstate commerce. Even adding the omitted information, the affidavit supports such a finding.

Because Mr. Schaefer has failed to provide a detailed offer of proof and because the identified false statements and omissions are not material to the finding of probable cause, Mr. Schaefer's motion for a *Franks* hearing is denied.

## VI.    **Motion to Dismiss Counts 1 and 2**

Under 12(b)(3), a defendant must raise motions to challenge a defect in the indictment, including a failure to state an offense, before trial. "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "The court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id.* "Where the indictment 'tracks the words of the statute charging the offense,' the indictment will be held sufficient 'so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (quoting *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir. 1989)). "The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." *Boren*, 278 F.3d at 914.

Mr. Schaefer was charged with assaulting a federal officer in violation of 18 U.S.C. § 111(a) and (b). Specifically, the indictment reads:

On or about October 11, 2017, in the District of Oregon, defendant JASON PAUL SCHAEFER did forcibly assault D.D., a person designated as a federal officer under 18 U.S.C. § 1114, while D.D. was engaged in and on account of his official duties, by (a) willfully attempting to inflict injury on D.D., and (b) making a threat coupled with an apparent ability to inflict injury on D.D. which caused D.D. a reasonable apprehension of immediate bodily harm; and in the commission of the assault defendant used a deadly and dangerous weapon.

Section 111 reads, in relevant part:

**(a)** Whoever—

> **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

. . .

shall, . . . where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

**(b) Enhanced penalty**.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

Mr. Schaefer argues that counts 1 and 2 should be dismissed because the officers are not federal officers as required by statute. This is a factual dispute not properly resolved on a motion to dismiss the indictment. The Court is bound to the four corners of the document itself and must accept as truth the allegations therein. Here, the indictment tracks the words of the charging statute, alleging that D.D. was designated as a federal officer under 18 U.S.C. § 1114. The indictment is therefore sufficient, and the Court denies Mr. Schaefer's motion to dismiss counts 1 and 2.

CONCLUSION

The Court denies Mr. Schaefer's motion to suppress search related evidence [70], motion to dismiss first superseding indictment count 7 for vagueness [72]; motion to dismiss the superseding indictment for vindictive prosecution [73]; motion for a *Franks* hearing [77]; and motion to dismiss counts 1 and 2 [79].

IT IS SO ORDERED.

Dated this ___17___ day of ___Van___, 2019.


___Marco Hernández___
MARCO A. HERNÁNDEZ
United States District Judge