BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**BENJAMIN TOLKOFF, NYSB #4294443**
Benjamin.Tolkoff@usdoj.gov
**NATALIE WIGHT, OSB #035576**
Natalie.Wight@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:17-cr-00400-HZ |
| v. | DECLARATION OF DR. RYAN NYBO |
| JASON PAUL SCHAEFER, | IN SUPPORT OF THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VIDEO RECORD OF COMPETENCY EVALUATION |
| Defendant. | |

## Declaration of Ryan Nybo, Psy.D.

I, Ryan Nybo, do hereby declare as follows:

1. I am a licensed psychologist currently employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as a Forensic Unit Psychologist at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac"). I have been in my current position since 2010, and have been employed as a Psychologist by the BOP since 2007.

2. As a part of my official duties, I conduct court ordered psychological evaluations pursuant to the federal mental health statutes as set forth at Title 18 U.S.C. §§ 4241, 4242, and 4244. Based on my experiences and current responsibilities, I am familiar with the processes surrounding evaluations and treatment under 18 U.S.C. § 4241(b).

3. Pursuant to my official duties I am familiar with FDC SeaTac inmate Jason Paul Schaefer, Register Number 80560-065. On December 13, 2018, the Court ordered Mr. Schaefer committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(b), for a psychiatric and/or psychological examination under 18 U.S.C. § 4247(b) to determine whether Mr. Schaefer presently suffers from a mental disease or defect rendering him mentally incompetent. On January 24, 2019, Mr. Schaefer arrived at FDC SeaTac for a mental competency evaluation.

4. The BOP's authority to conduct mental competency evaluations is based on the provisions of 18 U.S.C. § 4241, *et seq.* BOP forensic psychologists conduct these examinations on inmates who have been committed to the custody of the Attorney General for purposes of the examination. 18 U.S.C. § 4241 (b).

5. In determining mental competency, the assigned forensic evaluator relies on varied sources of information gathered throughout the evaluation period, which may include:

clinical interviews with the patient; documentary evidence contained in prison records or obtained from other sources; psychological testing; their own observations of the patient's behavior, and the observations of other staff members.

6. I am aware that Mr. Schaefer's attorney has requested video and audio recordings of the current mental competency evaluation.

7. As indicated above, evaluations of inmates pursuant to 18 U.S.C. § 4241(b) are based on information obtained from a variety of sources spanning the entire evaluation period, rather than from a single, or even a few interviews. In the setting of this secure institution, on a given day Mr. Schaefer may have contact, from brief to substantial, with staff from multiple departments at varied locations within the institution. It is not possible to record the numerous interactions Mr. Schaefer has with our staff, many of which are spontaneous, initiated by him or at times by staff in the vicinity. Consequently, it would be unduly burdensome for all contacts related to the evaluation to be recorded.

8. In pre-trial forensic evaluations, such as those completed under Section 4241(b), direct observations by the assigned examiners are supplemented by those of other staff. Examinees, wittingly or unwittingly, behave differently when meeting with a doctor, than when interacting with other health care staff, non-clinical staff, and their peers. Observation of the full range of examinee behavior contributes to the validity of in-custody evaluations, as compared to time-limited evaluations completed by a single evaluator. Constraining staff contacts to situations that allow for video and/or audio recordings would artificially limit the sources of information upon which the current evaluation could be based.

9. Further, the use of video and/or audio recording equipment may itself affect the examinee's behavior. A review of the literature regarding third party observation and/or

2

Decl. of Ryan Nybo in Supp. of Govt. Resp. to Mot. for Video Record of Eval.                Page 3 of 5

recording of psychological assessments notes that "[e]xaminees who are aware that their assessment is being recorded, either in audio only or in combined audio and video, may also alter their assessment behavior." (*Statement on Third Party Observers in Psychological Testing and Assessment: A Framework for Decision Making, Committee on Psychological Tests and Assessment*, American Psychological Association, 2007).

10. Again, the professional literature on the subject agrees that any such recording could potentially change the dynamic of the interview. The available empirical research demonstrates that like third party observers of the interviews and interactions, audio and/or video recording alters the testing session in such a manner that test results may no longer reflect the valid performance of the examinee. (McCaffrey, R., Lynch, J., Yantz, C. (2005); *Third Party Observers: Why All the Fuss?*, pp. 8, 11, Journal of Forensic Neuropsychology, Vol. 4(2)).

11. The sum total of this recording effect is to create unknown variability and cause the test results to not correspond to the tests' established known error rates. Ultimately, the recording effect makes the test results unreliable. Clinical decisions based on these "altered" results of having the examination video and/or audio recorded will not have the same level of scientific certainty as decisions based on results obtained from the test under normal conditions. (Costantinou, M., Ashendorf, L., McCaffrey, R. (2002); *When the Third Party Observer of a Neuropsychological Evaluation is an Audio-Recorder*, p. 411, The Clinical Neuropsychologist, 3, 407-412).

12. It is difficult enough to perform neuropsychological assessment within the criminal setting without adding increased potential error by including third party recording effects.

13. In sum, creating a video and/or audio recordings during relevant clinical contacts

3

**Decl. of Ryan Nybo in Supp. of Govt. Resp. to Mot. for Video Record of Eval.**        Page 4 of 5

with Mr. Schaefer would require a significant deviation from the ordinary course of practice at FDC SeaTac and interfere with the evaluation process in Mr. Schaefer's case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __6rd__ day of February, 2019, at SeaTac, Washington.

_____
Ryan Nybo, Psy.D.
Forensic Unit Psychologist
Federal Detention Center
SeaTac, Washington

4