IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


UNITED STATES OF AMERICA,                                   No. 3:17-cr-00400-HZ

        v.

JASON PAUL SCHAEFER,                                        OPINION & ORDER

                Defendant.


William Narus
Natalie K. Wight
U.S. Attorney's Office
1000 SW Third Ave., Suite 600
Portland, OR 97204

                Attorneys for Plaintiff

Jason Paul Schaefer
USM #80560-065

                Pro se Defendant

Lisa Ludwig
Ludwig Runstein LLC
333 SW Taylor St., Suite 300
Portland, OR 97204


OPINION & ORDER - 1

Tiffany A. Harris
Tiffany A. Harris, Attorney at Law
333 SW Taylor St., Suite 300
Portland, OR 97204

       Stand-by Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Defendant Jason Paul Schaefer is charged with two counts of assault on a federal officer in violation of 18 U.S.C. § 111(a) and (b); one count of carrying and using a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(l)(B)(ii); one count of using an explosive to commit a federal felony in violation of 18 U.S.C. § 844(h)(l); one count of carrying an explosive during the commission of a federal felony in violation of 18 U.S.C. § 844(h)(2); one count of unlawful transport of explosive materials in violation of 18 U.S.C. §§ 842(a)(3)(A) and 844(a); one count of possession of an unregistered destruction device in violation of 26 U.S.C. §§ 5841, 586l(d), 5871; and one count of felon in possession of explosives in violation of 18 U.S.C. §§ 842(i)(l) and 844(a).

       Mr. Schaefer, proceeding pro se, filed fifteen pretrial motions in this case between April 5, 2019 and April 11, 2019. Five of those motions were either denied or withdrawn at oral argument on April 24, 2019. The remaining motions include:

       (1) Motion to dismiss for speedy trial act violations [146];

       (2) Motion to dismiss for *Brady* violations [150];

       (3) Motion to dismiss for outrageous government misconduct [160];

       (4) Four motions to suppress evidence [152][155][158][162];

       (5) Motion for a *Franks* hearing [164]; and

       (6) Two motions to compel discovery [148][183].

Additionally, Defendant's motion to suppress statements, filed October 27, 2018, remains pending at this time.

For the reasons that follow, Defendant's motion to compel discovery [183] is denied in part and granted in part. The Court denies all other motions.

BACKGROUND[1]

Mr. Schaefer made a series of online purchases from eBay between March and September of 2017. On September 21, 2017, FBI agents in Portland learned of these purchases. Included among these purchases were a number of chemicals that agents determined could be used to make explosives.

On October 10, 2017, agents obtained a search warrant for Mr. Schaefer's apartment. In the request for this warrant, agents relied in part on information provided by eBay. This information was originally volunteered and subsequently produced in response to a grand jury subpoena. Agents also relied on information from a previous encounter with Mr. Schaefer in April 2017. In that encounter, police responded to a hazardous material call and found mercury inside Mr. Schaefer's garage.[2]

When Mr. Schaefer's probation officer learned a search warrant had been issued, she called Mr. Schaefer and ordered him to appear in her office the following morning. When he appeared the morning of October 11, 2017, law enforcement officers—from the FBI, Washington County Sheriff's Office, Portland Police Bureau, Oregon State Police, and other agencies—executed the warrant at his vacant apartment. After Mr. Schaefer left the probation office, officers, working in coordination with those executing the warrant, attempted to follow

---

[1] The Court heard oral argument on November 20, 2018, April 24, 2019, and April 29, 2019. No evidence was presented. The following facts are taken from the parties' briefing and exhibits submitted between October 27, 2018 and April 26, 2019.

[2] Following this encounter, Mr. Schaefer was convicted of being a felon in possession of body armor and placed on probation.

him. After they lost contact, Mr. Schaefer's probation officer told officers she would issue a detainer on defendant for violating the terms of his probation.

Mr. Schaefer eventually returned to his apartment complex. When officers recognized his car, they attempted to stop him. Despite being told he was under arrest, he drove away. After a short pursuit, Mr. Schaefer's car came to a stop in traffic. Two officers used their cars to box him in, drew their guns, and ordered him out of the car. Instead of complying with these commands, Mr. Schaefer stated something to the effect of "we're all going to die" and ignited a cigarette package he was holding. The cigarette package detonated, and Mr. Schaefer's left hand was severely injured.

Mr. Schaefer was arrested and transported to a hospital for medical treatment.[3] Meanwhile, Mr. Schaefer's car and its contents—including a second cigarette package—were searched without a warrant. The cigarette package allegedly contained TATP, an explosive material. Additional evidence, which included e-matches, chemicals, black powder, and what appeared to be a remoted firing system, was discovered in Mr. Schaefer's apartment pursuant to the original warrant. Officers also seized electronic storage devices, and a business card for a storage facility, with a unit listed on back. Officers immediately opened and secured the storage unit without a warrant. They did not observe any obvious threats to public safety but did observe a container that looked like a cooler. After later obtaining and executing a warrant for the storage unit, officers found additional incriminating evidence.

Mr. Schaefer was indicted by grand juries in both Washington County and the federal District of Oregon.

---

[3] Mr. Schaefer was eventually transferred to the Washington County jail where he made a number of recorded phone calls to his father.

DISCUSSION

I.    **Motion to Suppress Statements**

On October 27, 2018, Defendant filed a motion to suppress the statements he made to law enforcement and to his parents.[4] He argues these statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, (1966) and were involuntary under the Due Process Clause. He argues, in part, that he was in immense pain and distress, and was under the influence of Ibogaine[5] and powerful pain medication.

On November 20, 2018, the Court held oral argument on the motion. As stated on the record, and in the Opinion & Order issued January 17, 2019 (hereinafter "O&O"), the Court reserved ruling on the issue and stated that "to the extent the parties wish to present evidence on Defendant's Motion to Suppress Statements [71], the Court will hear this evidence, and any further argument, at the pretrial conference."

On April 29, 2019, the Court again heard argument on the motion. The government did not present any additional evidence, but rather clarified which statements it proposed introducing at trial. These included:

(1) Statements captured by body camera footage from the April 2017 incident;

(2) Defendant's statements to an officer in the parking lot of Defendant's apartment complex, prior to the detonation of an explosive;

(3) Defendant's alleged threats immediately preceding the detonation of an explosive;

(4) Statements captured on a video of Defendant, taken immediately after the detonation of an explosive; and

(5) Jail calls between Defendant and his father.

---

[4] The statements to his parents were made over recorded jail calls.
[5] Ibogaine is a Schedule I Controlled Substance in the United States. 21 C.F.R. § 1308.11

As an initial matter, the Court granted Defendant's motion in limine to exclude all evidence related to the April 2017 incident. This includes the body-cam footage that recorded Defendant's statements.[6] Defendant has also indicated that he does not object to the introduction of the video that captured statements he made immediately following the detonation of an explosive.

As to the remaining statements, the Court finds Defendant's arguments, relying on alleged *Miranda* and Due Process Clause violations, without merit. Under *Miranda* "the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning." *Illinois v. Perkins,* 496 U.S. 292, 296 (1990). A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* (quoting *Miranda*, 384 U.S. at 444). Involuntary confessions are also inadmissible under the Due Process Clause. *Colorado v. Connelly*, 479 U.S. 157 (1986); *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011). However, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause[.]" *Connelly*, 479 U.S. at 167.

Here, Defendant's statements were not the product of custodial interrogations. Defendant was not in custody when he made statements before the explosion. Defendant's statements to his father were just that—a recorded conversation between a father and son—and not the product of a police interrogation. While Defendant may argue he was heavily medicated and in extreme pain and distress following a traumatic injury and surgery, the Court found, after listening to the recordings, that Defendant was clear and coherent. As stated on the record, any medicine he may

---

[6] The Court also notes that Defendant has raised no arguments regarding the April statements in either his briefing or argument on this issue.

have been taking did not impact his ability to communicate or understand the context of his conversations. Moreover, Defendant has failed to identify any coercive police activity to support a finding that his statements were not voluntary under the Due Process Clause.

Defendant's motion to suppress statements is therefore denied.

II.    **Motion to Dismiss for Violations of the Speedy Trial Act**

Defendant moves to dismiss the case for Speedy Trial Act violations. Defendant first states that "the government took 40 days to transport [him] to [the] competency evaluation, and about 15 days to transport [him] back to Portland[.]" Def. Mot. to Dismiss/Speedy Trial, ECF 146. In his reply, Defendant argues that (1) the Court abused its discretion and pressured Defendant to waive his speedy trial rights on January 30, 2018 and June 18, 2018; (2) the government moved for the competency evaluation in bad faith; (3) the government has filed three superseding indictments based on the same evidence; (4) the time between September 24, 2018 and March 23, 2019 was improperly excluded without Defendant's consent; and (5) the Court failed to rule on the first round of pretrial motions within thirty days.

Under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, a defendant must be brought to trial "within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1); *United States v. Medina*, 524 F.3d 974, 978 (9th Cir. 2008). However, those seventy days are tolled pursuant to certain "automatic" exclusions outlined in the Act. *Medina*, 524 F.3d at 978. For example, under § 3161(h)(1)(F), a court must exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." § 3161(h)(1)(F); *Medina*, 524 F.3d at 978. A court must also exclude "delay reasonably

attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." § 3161(h)(1)(J).

For purposes of the Speedy Trial Act, there are two types of pretrial motions: those that require a hearing, and those that do not. *Medina*, 524 F.3d at 978. Generally, if a pretrial motion

> requires a hearing, a district court must exclude the following periods of delay: (i) the period from the date the motion was filed to the conclusion of the hearing; (ii) the period from the conclusion of the hearing until the date the district court "receives all the submissions by counsel it needs to decide that motion; and (iii) the period from the last day of the period described in (i) or (ii), as applicable, until the court rules on the motion, but no more than 30 days, In general, the district court must exclude these periods of delay whether or not the delay was reasonably necessary. Moreover, the district court must exclude time while the motion is pending even if the court ultimately does not hold a hearing or rule on the motion.

*Id.* at 979 (citations and quotation marks omitted).

The Court first addresses Defendant's argument regarding the government's delay in transporting him to the competency evaluation. Defendant is correct that transportation delays of more than ten days, calculated from the date of the order directing transportation to the arrival at the destination, are presumptively unreasonable. 18 U.S.C. § 3161(h)(1)(F). However, this time is properly and automatically excluded for another reason: the motion to suppress Defendant's statements, filed October 27, 2018, is resolved by this Opinion.

A motion to suppress statements falls within the type of motions that normally requires an evidentiary hearing. *Medina*, 524 F.3d at 983. Here, the Court heard oral argument on the motion on November 20, 2018. Based on the record at the time, the Court determined that further evidence was necessary before a ruling could be issued. *See* O&O 13, ECF 121. The parties agreed to revisit the issue and present evidence at the pretrial conference. Thus, the time from the filing of the motion to thirty days after the motion was taken under advisement is automatically excluded.

The Court dismisses Defendant's remaining arguments as they are neither developed nor supported. Defendant does not identify evidence to suggest that his waivers in January and June of 2018 were involuntary. *See also United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir. 1994) ("Where a defendant stipulates to the need for trial preparation, he 'cannot maintain that these continuances give rise to a[] [Speedy Trial Act] violation.'"). The evidence does not support Defendant's argument that the government's motion for a competency evaluation was made in bad faith. The fact that the government has now filed three superseding indictments is not relevant to this analysis, as these new indictments were never used to restart the clock for Speedy Trial Act purposes. Defendant does not explain why the time between September 24, 2018 and March 23, 2019 was improperly excluded. And, although the Court did not rule on Defendant's first round of suppression motions within thirty days, that time is properly excluded for the reasons discussed above.

Defendant's motion to dismiss for Speedy Trial Act violations is therefore denied.

III. **Motion to Dismiss for *Brady* Violations**

The suppression of favorable evidence violates due process when that evidence is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "There are three components of a *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Stinson*, 647 F.3d 1196, 1208 (9th Cir. 2011), as amended (citation and quotation marks omitted). To show prejudice, a defendant must show that the suppressed evidence is material. *Id.* Evidence is material when the admission of that evidence would "have created a reasonable probability of a different result, so the defendant must show only that the

government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* (citation and quotation marks omitted).

### A.  Failure to Obtain Exculpatory Evidence

Defendant first argues the government violated *Brady* by failing to obtain and preserve (1) statements from civilian witnesses and (2) footage from traffic cameras. Defendant argues that this evidence, related to his stop and the subsequent detonation of an explosive, would be exculpatory because it would show that Defendant did not scream death threats.

 "While the prosecution must disclose any [*Brady*] information within the possession or control of law enforcement personnel, it has no duty to volunteer information that it does not possess or of which it is unaware." *United States v. Monroe*, 943 F.2d 1007, 1011 n.2 (9th Cir. 1991) (quoting *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir. 1985)) (alteration in original). "*Brady* does not require the government to create exculpatory evidence that does not exist." *Id.* (citing *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980)).

The government has represented to the Court that it does not possess the evidence Defendant seeks. Defendant does not argue that officers collected the disputed evidence but failed to disclosure it. Rather, he argues that this evidence *should have been*—but wasn't— collected in the first place. The government is required to provide the exculpatory evidence it possesses; it is not required to create that evidence in the first place. *See United States v. Solano*, 694 F. App'x 581, 581 (9th Cir. 2017) (Mem) ("To the extent that [the defendant] asked the court to order the Government to affirmatively investigate certain individuals, the court did not err by denying this request."). Defendant's motion to dismiss on these grounds is therefore denied.

**B. Destruction of Evidence**

Defendant next argues the government violated *Brady* by destroying exculpatory evidence. In particular, he contests the destruction of his chemical laboratory, which, according to Defendant, included glassware, hot-plates, beakers, and chemicals. He also argues that officers effectively destroyed evidence by ordering witnesses to leave the scene before they were interviewed and by breaking several windows in his car.

To dismiss an indictment based on the government's destruction of evidence, a defendant must establish that:

(1) the destroyed evidence was "potentially" exculpatory;

(2) the destruction was done in bad faith; i.e., the government knew of the potentially exculpatory value of the samples when it destroyed them;[7] and

(3) Defendant has no alternative means of proving his point. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). *See also California v. Trombetta*, 467 U.S. 479, 489 (1984); *United States v. Cooper*, 983 F.2d 928, 930-31 (9th Cir.1993).

*United States v. Vera*, 231 F.Supp.2d 997, 999 (D. Or. 2001).

The government has admitted to destroying "bulk chemicals seized from defendant's residence (although samples were collected and maintained in evidence), and any glassware from defendant's apartment that was contaminated." Gov Consolidated Resp. to Mot. to Compel Discovery, 3-4, ECF 189. The Court understands that Defendant intends to argue at trial that he was producing Ibogaine. However, Defendant has not explained to the Court how the specific materials at issue are either relevant or exculpatory to the charges at hand. He has also not explained how the existing samples—collected and maintained by the government—will not allow him to prove any point he wishes to make. Lastly, as stated on the record, Defendant has not made a showing of bad faith.

---

[7] "Bad faith is shown when 'the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.'" *Vera*, 231 F.Supp.2d at 1000 (quoting *Youngblood*, 488 U.S. at 58).

Defendant's motion to dismiss on these grounds is therefore denied.

IV.    **Motions to Suppress Search Related Evidence.**

Defendant filed four motions to suppress evidence. In these motions, Defendant makes a number of arguments, which are organized here by topic, rather than by motion.

   A.  **eBay**

Defendant argues that eBay is a de facto government actor, and evidence gained from eBay's release of Defendant's information must be suppressed.

The Court has already determined that, under the third-party doctrine, Defendant did not have a reasonable expectation of privacy in the records of his purchases. *See* O&O 10. For the same reasons, Defendant also did not have a reasonable expectation of privacy in his account information. *See United States v. McCutchin*, 2019 WL 1075544, * 2 (D. Ariz. Mar. 7, 2019) (no "reasonable expectation of privacy to the internet subscriber information as it fits squarely within the third-party doctrine."). While Defendant raises new arguments regarding his subjective expectation of privacy and whether that expectation was reasonable, these arguments do not change the Court's original analysis. Because Mr. Schaefer did not have a reasonable expectation of privacy in the information at issue, the Court need not address whether eBay functioned as a de facto government actor.

   B.  **Agents' Ulterior Motives**

Defendant argues throughout his motions that agents (1) knew he was manufacturing Ibogaine, (2) were motivated by a desire to search his apartment for evidence related to the manufacture of Ibogaine, and (3) did, in fact, search his apartment for evidence of Ibogaine. In other words, Defendant argues that agents' proclaimed interest in explosives was merely a

pretext for their true, ulterior motive: the discovery of evidence related to Defendant's

manufacture of Ibogaine.

An agent's good faith or ulterior motive does not determine whether evidence in plain

view, under the terms of a search warrant, should be suppressed. *United States v. Ewain*, 88 F.3d

689, 694 (9th Cir. 1996) ("A policeman's pure heart does not entitle him to exceed the scope of a

search warrant, nor does his ulterior motive bar a search within the scope of the warrant, where

the warrant was properly issued."). While the subjective motivations of an agent "may be

evidence that the search exceeded the scope of the warrant[,]" the determinative question

remains "whether the officers looked in places or in ways not permitted by the warrant." *Id.* at

694-95.

Here, the search warrant for Defendant's apartment was properly issued. The warrant

authorized officers to search for evidence related to explosives. Defendant was charged with

crimes related to explosives. Defendant was not charged with crimes related to the manufacture

of drugs. Defendant has offered no evidence that officers exceeded the scope of the warrant by,

for example, searching an area where explosive materials could not have been found.[8] Thus,

Defendant's argument that officers had an ulterior motive to search for evidence related to the

manufacture of drugs is irrelevant to the Court's analysis of whether evidence should be

suppressed.

### C.  Seizures

Defendant identified two examples of "false arrest" and "illegal seizure" that he argues

require the suppression of evidence.

---

[8] Although Defendant appears to argue in passing that officers exceeded the scope of the warrant by seizing his laboratory, the search warrant authorized agents to seize chemicals and other items related to the manufacture of explosives.

First, Defendant argues he was seized by his probation officer on October 10, 2017, when she called and ordered him to report to the probation office the following morning. Defendant argues that because he "was only driving around and left his house because of this imminent seizure, evidence obtained as a result and testimony obtained as a result must be suppressed." Def. Third Mot. to Suppress 2, ECF 158.

As an initial matter, Defendant's probation conditions state that Defendant must "[r]eport as required" and "abide by the direction of the supervising officer." Gov. Resp. Ex. 1 at 6, ECF 187-1. The conditions do not limit when, how often, or for what reason a probation officer may require a probationer to appear. *See id.* Defendant does not challenge the probation conditions themselves or identify case law that might support his position that a probation officer may only call a probationer into her office at certain times or for certain reasons.

Moreover, Defendant's probation officer did not seize Defendant at the moment she instructed him—over the phone—to report to her office the following morning. While Defendant eventually complied with this instruction, he does not argue he was seized when he appeared at the probation office. In fact, the record suggests that when he decided to leave the office, he was not stopped. Defendant himself says he was told not to return home; he does not say he was told not to leave. *See* Def. Reply 4, ECF 202. And, even if he was seized at the probation office, Defendant has identified no evidence to be suppressed. Officers obtained a valid search warrant to search Defendant's apartment *before* he was called into the probation office. And the Court has already ruled that Defendant was not seized until after he detonated an explosive in the presence of two officers.

The second incident identified by Defendant involves an arrest warrant obtained by his probation officer. Defendant argues the warrant was invalid because it was based on false

statements from an agent searching Defendant's apartment. The agent stated that Defendant "booby-trapped" his apartment, which Defendant denies. The Court's previous O&O resolves this issue. Based on the briefing and exhibits submitted in the first round of pretrial motions, the Court determined that Defendant was seized *after* he detonated an explosive in the presence of two officers. At that point, those officers had probable cause to arrest the Defendant, with or without an arrest warrant. Thus, the arrest was valid and suppression on these grounds is not warranted.

**D.  Storage Unit**

Defendant argues that evidence discovered in the storage unit must be suppressed because officers: (1) raided the storage unit without a warrant or exception to the warrant requirement; (2) exceeded the scope of the search warrant when they seized a business card from his apartment; (3) did not have probable cause to support a warrant for the storage unit; (4) did not, in good faith, search for explosives, but actually searched for drugs (which were not authorized by the search warrant).

The Court already found that officers did not exceed the scope of the search warrant when they seized the business card at issue. O&O 11. The Court also found there was probable cause to support the warrant for the storage unit. *Id.* at 12. As discussed above, Defendant's speculative assertion that agents actually intended to search for drugs is irrelevant to this analysis.  The remaining question is therefore whether agents searched the storage unit without a warrant or exception to the warrant requirement.

The government argues the warrantless search was justified by the exigent circumstances doctrine. To justify a warrantless search based on exigent circumstances, the government must show that: "(1) considering the totality of the circumstances, law enforcement had an objectively

reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." *United States v. Reyes–Bosque*, 596 F.3d 1017, 1029 (9th Cir. 2010) (*quoting United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008)). "[B]ecause exigent circumstances necessarily imply insufficient time to obtain a warrant, the government must also show that a warrant could not have been obtained in time." *United States v. Lindsey*, 877 F.2d 777, 781 (9th Cir. 1989). "Exigent circumstances are frequently found when dangerous explosives are involved." *Id.*

Here, the warrantless search was justified based on exigent circumstances; officers had an objectively reasonable basis for concluding there was an immediate need to protect the community from serious harm and reasonably limited the scope and manner of their search. Before entering the storage unit, officers executed a valid search warrant at Defendant's apartment. There, they found black powder, electric matches and what appeared to be a remote firing system. They knew Defendant had purchased a number of chemicals over a period of months, and had found containers for several chemicals that could be used to manufacture explosives. They knew that Defendant had spilled mercury in the garage of his old apartment building. They also knew that Defendant had yelled threats and detonated an explosive device.

At the storage unit, bomb technicians forcibly opened the door and took a photograph of the contents to identify any immediate threats to public safety. When the technicians did not observe any immediate threats, they secured the unit and left the facility. Agents then obtained a warrant to search the storage unit more thoroughly. The warrant did not rely on any evidence discovered in the first warrantless search.

The government submits that officers could not have obtained a warrant in time for the search. Defendant detonated the explosive in the afternoon of October 11, 2017. That same

OPINION & ORDER - 16

evening, bomb technicians from the Portland Metropolitan Explosive Disposal Unit (MEDU) opened the storage unit. Collins Decl. 2, ECF 241. Between those two events, the MEDU was "extremely busy addressing matters of urgent public safety," which included responding to the explosion in Defendant's car, addressing the possibility of further explosives in Defendant's car, and dealing with items found in Defendant's apartment. *Id.* MEDU submits that "[i]t would have been impossible to address those safety concerns and also get a warrant before we entered the storage unit." *Id.*

Based on this record, and the lack of argument from Defendant to the contrary, the Court finds that the warrantless search of the storage unit was based exigent circumstances and objectively reasonable under the Fourth Amendment.

Even if the warrantless entry was not supported by exigent circumstances, Defendant has identified no evidence to be suppressed. On the record before the Court, officers did not discover any evidence in the initial, warrantless search. Rather, officers merely took a picture and secured the storage unit. The affidavit for the search warrant did not rely on information from the warrantless search to establish probable cause. Rather, officers disclosed the initial, warrantless entry to the magistrate judge, stated that they did not observe any immediate threats, and relied on the events—including the detonation of an explosive device—that had unfolded that day. Evidence discovered pursuant to a valid search warrant that did not rely on evidence discovered in a prior illegal search need not be suppressed. *Segura v. United States*, 468 U.S. 796, 799 (1984) (finding that "[t]he valid warrant search was a 'means sufficiently distinguishable' to purge the evidence of any 'taint' arising from the [illegal] entry" where "none of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment.").

Defendant's motions to suppress evidence are therefore denied.

V.    **Motion to Dismiss for Outrageous Government Misconduct**

Defendant moves to dismiss the indictment based on the following instances of

"outrageous government misconduct:"

(1)  Defendant was illegally seized by his probation officer;

(2)  Agents fabricated a reason to arrest Defendant by falsely reporting that his apartment was booby-trapped;

(3)   The government "frolick[ed] outside the parameters of their search warrant" and seized his laboratory, which was "vaguely suspected of producing drugs;"

(4)  During the course of his arrest, and while he was "bleeding and screaming from a traumatic injury which could have killed him," officers directed him around the arrest scene and photographed him "in various poses" for "several minutes, without calling an ambulance." According to Defendant, the photos were "intended to depict [him] being blasted out of his car by an explosion;"

(5)  Officers lied when they said he yelled death threats before detonating an explosive, and these lies were then offered by the government to a grand jury.

A district court may dismiss an indictment when outrageous government conduct violates due process. *United States v. Barrera-Moreno,* 951 F.2d 1089, 1091 (9th Cir. 1991). If the conduct did not violate due process, a court may still dismiss an indictment under its supervisory powers. Supervisory powers may be used "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct." *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991). "However, because '[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority,' this sanction may be permitted only 'in cases of flagrant prosecutorial misconduct.'" *United States v. Chapman*, 524 F.3d 1073, 105 (9th Cir. 2008) (quoting *Simpson*, 927 F.2d at 1091).

Here, Defendant has identified no evidence of flagrant prosecutorial misconduct. The question is therefore whether the government's conduct violated due process.

"To violate due process, governmental conduct must be 'so grossly shocking and so outrageous as to violate the universal sense of justice.'" *Barrera-Moreno*, 951 F.2d at 1092 (quoting *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir.1991)). Government conduct may be grossly shocking where "police have been brutal, employing physical or psychological coercion against the defendant." *United States v. Simpson*, 813 F.2d 1462, 1465 (9th Cir. 2000) (citation omitted). For example, in *Rochin v. California*, police officers violated a defendant's right to due process when they broke into his bedroom, attempted to pull drug capsules from his throat, and forcibly pumped his stomach to retrieve the capsules. 342 U.S. 165, 172 (1952). In *Huguez v. United States*, the Ninth Circuit relied on *Rochin* to find that the government's conduct violated due process when border patrol officers forcibly removed narcotics packets from a defendant's rectum while he was handcuffed and held spread-eagled across the table by other officers. 406 F.2d 366, 381 (9th Cir. 1968).

On the other hand, cases do not violate due process where highly intrusive actions are taken without "coercion, violence, or brutality to the person." *Irvine v. California*, 347 U.S. 128, 133 (1954); *see also United States v. Kelly*, 707 F.2d, 1460, 1476 (D.C. Cir. 1983) ("The requisite level of outrageousness . . . is not established merely upon a showing of obnoxious behavior or even flagrant misconduct on the part of the police; [due process] is not transgressed absent 'coercion, violence or brutality to the person.'").[9]

---

[9] Defendant makes a vague reference to another line of cases cited by the government. These cases discuss "outrageous government conduct" in the context of accusations that the government has directed a criminal enterprise from start to finish. *See United States v. Garza-Juarez*, 992 F.2d 896 (9th Cir. 1993). The facts here do not support any such argument or theory.

As a preliminary matter, Defendant's first three arguments—regarding allegedly illegal searches and seizures—have each been addressed and disposed of by the Court's discussion of Defendant's motions to suppress.

Defendant's fourth argument fails to identify "grossly shocking and outrageous" conduct that violates a universal sense of justice. Defendant has identified no technical physical assault, much less a "highly intrusive action" taken with "coercion, violence, or brutality" to his person. Rather, he challenges actions that occurred *after* a traumatic injury that he inflicted upon himself. According to Defendant, he was ordered to leave his vehicle and pose for photographs, and officers delayed calling an ambulance for several minutes. Based on the record before the Court—including the fact that Defendant allegedly detonated an explosive device in the presence of officers—the Court cannot find that these actions alone violated Defendant's right to due process.

Defendant's final argument—that officers lied about his alleged death threats—is also without merit. Defendant has offered no evidence that the government knowingly presented false testimony to the grand jury. To the extent Defendant disagrees with the testimony at issue, he may present his own evidence and highlight any inconstancies for the jury as a finder of fact. *United States v. Williams*, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008) (rejecting defendant's argument that the indictment should be dismissed because the government violated their due process rights by presenting allegedly perjured testimony at trial).

Defendant's motion to dismiss for outrageous government conduct is therefore denied.

VI.     **Motion for *Franks* Hearing**

Defendant brings a second motion for a *Franks* hearing to challenge the veracity and sufficiency

of the October 10, 2017 search warrant affidavit. Defendant identifies new omissions and

falsehoods that he argues warrant a *Franks* hearing. To summarize, Defendant argues that:

> [t]he other purchases on eBay, the Defendant's criminal record, the varying I.P. addresses
> and people associated with the eBay account, Wade Mutchler's prior experiences with
> the Defendant and his knowledge of the Defendant's laboratory activities, Wade
> Mutchler's intent to search for drugs, Wade Mutchler's belief that the Defendant may be
> making fireworks, Wade Mutchler's knowledge that Jason Schaefer had been linked to
> other active email addresses and eBay accounts, and Wade Mutchler's historical
> knowledge that "e-matches" could be purchased on eBay without an explosives license,
> were all relevant to the magistrate's determining of probable cause.
>
> Without all of this information, and all of the truth, the magistrate would not have
> believed the Defendant was engaged in the manufacture of explosives, that the "e-
> matches" qualified as "igniters" and explosives, or that the e-matches were at the place to
> be searched.

Def. Mot. for *Franks* Hearing and Suppress Evidence 6-7, ECF 164.

To recap the law on this issue, in *Franks v. Delaware*, 438 U.S. 154 (1978) the Supreme

Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing

where he can attack the veracity of a search warrant affidavit or challenge the omission of

material facts in the affidavit. Five requirements must be satisfied for a hearing under *Franks*:

> (1) the defendant must make specific allegations that indicate the portions of the warrant
> claimed to be false; (2) there must be a contention of deliberate falsehood or reckless
> disregard for the truth; (3) the allegations must be accompanied by a detailed offer of
> proof, preferably in the form of affidavits; (4) the offer of proof must challenge the
> veracity of the affiant, not that of an informant; and (5) the challenged statements in the
> affidavit must be necessary to a finding of probable cause.

*United States v. Ortega*, 185 F.3d 871 (9th Cir. 1999) (citing *United States v. Kiser*, 716 F.2d

1268, 1271 (9th Cir. 1983)).

Where a defendant requests a *Franks* hearing based on the omission of a material fact, he

must (1) "make a substantial preliminary showing that the affidavit contained a misleading

omission" that "resulted from a deliberate or reckless disregard of the truth," and (2) demonstrate that "had there been no omission, the affidavit would have been insufficient to establish probable cause." *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994); *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011).

The Court previously found that the affidavit contained probable cause to find that Defendant was a convicted felon who had either received or possessed explosives shipped in (or affecting) interstate commerce. O&O 20. To the extent Defendant reiterates the same arguments he raised in his first motion for a *Franks* hearing, those argument are denied.[10]

Defendant does, however, raise new arguments regarding alleged falsehoods and omissions. First, Defendant argues that an agent falsely characterized e-matches as explosives. According to Defendant, e-matches are not igniters (and therefore not explosives) because (1) they can be purchased from websites like Amazon and eBay without an explosives permit, (2) they are advertised for use with fireworks, and (3) they burn rather than explode.

Under 18 U.S.C. § 841(d),

> "explosives" means any chemical compound mixture, or device, the primary or common purpose of which is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord, and igniters.

In the application for a search warrant, an agent stated that, based on his training and experience, electric matches ("e-matches") are a type of igniter. He explained that a chemical compound on the end of an e-match burns to begin the combustion process for low and primary high explosives. Another ATF agent also opined that the e-matches at issue were regulated

---

[10] Thus, the Court will not re-examine Defendant's arguments regarding his criminal history and whether agents knew—or should have known—that Defendant was making Ibogaine. As stated in the first O&O, while information regarding the speculative argument that agents believed Defendant was manufacturing drugs "could perhaps support an alternative search warrant for the illegal manufacture of drugs, that does not mean it detracts from the probable cause here." O&O 20.

explosives. Defendant has identified no proof—other than his own arguments—to rebut the

agents' conclusion. Even assuming that Defendant is correct, and e-matches are not igniters or

explosives, Defendant has failed to offer any proof that any possible misrepresentation was made

deliberately or with reckless disregard for the truth.[11]

Defendant's attempts to identify new omissions similarly fail. Defendant argues, for

example, that agents provided the magistrate judge with a selective list of purchases from eBay.

He argues the eBay purchases were not authenticated, i.e. the agents did not ascertain whether he

had ever *actually* possessed any of the items linked with the eBay account.[12] He argues his name

was associated with other email addresses and accounts. He also argues that the eBay account at

issue was accessed by many different IP addresses from around the world. However, Defendant

has not identified any evidence that these omissions resulted from a deliberate or reckless

disregard of the truth. And, as stated in the first O&O, "[t]he affidavit need only contain probable

cause to find that Mr. Schaefer was a convicted felon who had either received or possessed any

explosive shipped in (or affecting) interstate commerce. Even adding the omitted information,

the affidavit supports such a finding." O&O 20.

Defendant's motion for a *Franks* hearing is therefore denied.

VII.    **Motions to Compel**

    A.    **ECF 148**

The government has responded to Defendant's motion to compel discovery by

representing that it either does not have the requested information, has provided the Defendant

---

[11] Defendant also appears to argue that the evidence related to e-matches was stale because e-matches are single use items and likely to be used for fireworks in the summer. However, there is no evidence that Defendant had, up to that point, ignited his e-matches. Thus, it was reasonable to believe they still existed and were in his apartment.
[12] A search warrant requires only probable cause, and probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018).

with the requested information, or will provide Defendant with the requested information. The

Court therefore addresses only two remaining issues:

> (1) The identity of the eBay informant: Defendant's request is denied. "Disclosure of the identity of informants is required only if such information is 'relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'" *United States v. Kim*, 577 F.2d 473, 478 (9th Cir. 1978). The government does not intend to call the informant as a witness at trial, the information provided by the informant is not relevant to the pretrial motions currently at issue, and Defendant has not otherwise shown how the information is either relevant or helpful to his case or essential to a fair determination of cause.

> (2) Records and policies from the government databases DIUS, Sentinel, and Guardian: The government has indicated it will review the information in its possession, but asserts that Defendant's request is overbroad and does not explain why the information is material to the case. Defendant's request is denied absent more specific statements about what information he seeks and why that information is relevant to the case.

### B. ECF 183

Defendant requests information related to the grand juries in Washington County and the

District of Oregon. Specifically, Defendant requests (1) transcripts of the grand jury testimony of

Officers Diamond and Chedester; (2) grand jury notes; (3) the number of grand jurors present,

and (4) the number of grand jurors who voted to indict. With regard the testimony of Officers

Diamond and Chedester, the government has represented that the Washington County grand jury

proceedings were neither recorded nor reported, and therefore no recording or transcript of the

requested testimony exists. With regard to the testimony of both officers before a federal grand

jury, the government has stated it will provide Defendant with transcripts of the testimony. The

Court's ruling regarding the Washington County grand jury notes stands as stated on the record.

The remaining question is therefore whether Defendant is entitled to his request for the

number of grand jury members, polling records, and any grand jury notes from the federal grand

jury.

In *United States v. Cramer*, Judge Simon outlined the relevant standards:

> In *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979), the United States Supreme Court explained that the rule of grand jury secrecy has been an integral part of our criminal justice system and our federal common law since the seventeenth century. Federal Rule of Criminal Procedure 6(e) codified the principle of grand jury secrecy. *Id.* at 218 n.9. Although matters occurring before a grand jury are generally secret, courts have recognized a right of public access to ministerial grand jury records. *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 780-81 (9th Cir. 1984). The Ninth Circuit defined "ministerial" records as those that relate to the "procedural aspects of the impaneling and operation" of the grand jury rather than those that relate to the substance of the grand jury's investigation. *Id.* at 779 n.1. The court emphasized that disclosure of grand jury records must not defeat the purposes underlying Rule 6(e), including to: "(1) prevent the escape of prospective indictees, (2) insure the grand jury of unfettered freedom in its deliberations, (3) impede the subornation of perjury and tampering of witnesses by targets of the investigation, (4) encourage forthrightness in witnesses without fear of retaliation, and (5) act as a shield for those who are exonerated by the grand jury." *Id.* at 782-83. In other words, disclosures of grand jury matters should not undermine the "legitimate interests of the government, grand jurors, or other persons connected with the grand jury proceedings." *United States v. Diaz*, 236 F.R.D. 470, 476 (N.D. Cal. 2006) (citing *Special Grand Jury*, 674 F.2d at 782 n.4). A defendant, however, may gain access to non-ministerial records upon a showing of a particularized need. *Douglas Oil*, 441 U.S. at 221; *Diaz*, 236 F.R.D. at 480.

2019 WL 1048830, * 5 (D. Or. March 5, 2019). Judge Simon then concluded that grand jury notes and polling information are substantive, not ministerial, and therefore protected by the principles of grand jury secrecy. The Court agrees. Because Defendant will receive transcripts of the witness testimony, he has failed to identify any particularized need for the identified information. The Court therefore denies Defendant's request for polling records and grand jury notes.

However, Defendant has also requested the government disclose the number of jurors present. The Court concludes these records are ministerial. *See Special Grand Jury*, 674 F.2d at 779 n.1 (listing "roll sheets reflecting composition of the Special Grand Jury, attendance records of the Jurors, and any substitutions" as ministerial records). "Absent specific and substantial reasons for a refusal, [] access [to ministerial records] should not be denied." *Id.* at 781. The

government has not provided the Court with specific and substantial reasons for refusing to provide information on the number of jurors present. The Court therefore grants Defendant's request for this information.

CONCLUSION

Defendant's motion to compel discovery [183] is denied in part and granted in part. The Court denies all other motions.

IT IS SO ORDERED.

Dated this _____ 7th ___ day of _____ May _____, 2019.

_____
MARCO A. HERNANDEZ
United States District Judge

OPINION & ORDER - 26